## PRESTON SMITH *v*. THE STATE.

**Murder — Presumption of Malice.**

In a trial for murder where the killing with a deadly weapon is proved and the circumstances attending the killing are in evidence although no express malice appears from the proof it may be presumed from the use of the deadly weapon.[1].

**Change of Venue — When Application to be Made.**

An application for a change of venue comes too late when made after the trial of the case has been commenced.[2].

**Same — Organization of Jury.**

In capital cases it is competent for the court to require the State and the defendant to accept or reject each juror as examined and tendered.[3]

---

[1]
Where one is accused of murder, the law presumes him to be innocent until the contrary is made to appear; but if it be shown that he killed the deceased with a deadly weapon, the general presumption of innocence yields to the specific proof, and the law infers that the killing, if unexplained, was malicious and, therefore, murder; but if the attendant circumstances be shown in evidence by the State or the accused, the character of the killing is to be determined by considering them. McDaniel *v*. State, 8 S. & M. 401; Green *v*. State, 28 Miss. 687; Mask *v*. State, 36 Miss. 77; Hawthorn *v*. State, 58 Miss. 778; Bishop *v*. State, 62 Miss. 289. (Head *v*. State, 44 Miss. 731; Evans *v*. State, 622 Miss. 289, are in part disapproved.)

The burden of overcoming the presumption by evidence to the satisfaction of the jury is not placed upon the defendant. Hawthorn *v*. State, 58 Miss.

**Same — Uncommunicated Conditional Threats.**

    In a trial for murder where the plea of self-defense is interposed it is not error to exclude evidence of uncommunicated conditional threats.[4]

**Motion for a New Trial — Misconduct of Juror.**

    When a motion for a new trial is based on alleged misconduct of a juror and the presiding judge hears testimony on same and his conclusion is sustained by the record it will be accepted as true.[5]

At the July, 1884, term of the Circuit Court of Lincoln county appellant, Smith, was indicted for the murder of James G. Evans and at the January, 1885, term thereof he was tried and convicted of manslaughter and sentenced to the penitentiary and appeals. Affirmed. He demanded a special venire which was granted. The court announced that it would examine each juror touching his qualifications and if found to be qualified would be tendered to the State and after being accepted by the State he would be tendered to the defendant who would be required to then accept or reject the juror tendered. Defendant objected to this and his objection was overruled to which he excepted.

The first week of the court expired before a jury had been secured. Before any proceeding to complete the jury on the second

778; Bishop v. State, 62 Miss. 289; Ingram v. State, 62 Miss 142; Lamar v. State, 63 Miss. 265.

Such presumption should not determine the verdict but it should be considered simply as part of the whole case. Lamar v. State, 63 Miss. 265.

Presumption of malicious intent may arise from the nature of the weapon used. Woodside v. State, 2 How. 656; McDaniel v. State, 8 S. & M. 401.

Such an instruction, erroneous when viewed alone, will not necessitate a reversal if there are liberal charges for defendant in which it clearly appears that the law was properly announced. Bishop v. State, 62 Miss. 289.

2

Application for a change of venue, if made after the quashal of a venire, but before the writ for another one is issued, is not too late. Purvis v. State, 71 Miss. 706.

3

The State shall make all peremptory challenges before the juror is presented to the prisoner. Stewart v. State, 50 Miss. 587.

In a criminal case, not capital, the accused is entitled to a full panel before making his peremptory challenges. Thompson v. State, 58 Miss. 62.

If the defendant excuses any of the added jurors, the State must again fill the panel before tendering new jurors. Gibson v. State, 70 Miss. 554.

See also Smith & Cavin v. State, 61 Miss. 754.

week defendant applied for a change of venue and the court declined to hear it.

The evidence was to the effect that a hog of defendant had been killed by a son of the deceased and some controversy had arisen between defendant and deceased about it, and on the evening of the homicide defendant went to the mill of deceased where he and others were· at work and after being there for a while deceased and others came to where defendant was and in a few minutes defendant asked deceased to step aside with him as he wished to talk with him and they went about twenty. or thirty steps and deceased was standing up with his foot on a log on which defendant was sitting and in a few minutes they began to fight which attracted the attention of the bystanders who· went to them but when they reached them defendant had stabbed deceased a number of times with a pocket knife inflicting wouds from the effects of which he died almost instantly. No one knew which one struck the first blow. Defendant introduced evidence of threats made by deceased and one witness Watts, that about a week before the killing deceased told him that his boy had killed a hog belonging to defendant and that defendant and his father were cutting up about it, that he would rather fight them than to do anything else unless they would let him alone and he would fight them both at once if

4

On a charge of homicide, uncommunicated threats are inadmissible. Newcomb *v.* State, 37 Miss. 383.

Threats do not justify an assault and battery, much less the taking of the life of the party making them. Evans *v.* State, 44 Miss. 762.

Uncommunicated threats admitted in exceptional cases. Kendrick *v.* State, 55 Miss. 436; Johnson *v.* State, 66 Miss. 189; Hawthorn *v.* State, 61 Miss. 749.

5

If a juror without permission of the court separate from his fellows before the verdict is returned, it is good ground for a new trial, though he were attended by a sworn bailiff. Offit *v.* Vick, 1 Walker, 99.

If a juror not attended by an officer separate from the others for two or three minutes and pass out of the courtroom through a crowd of bystanders, whereby an opportunity was offered for tampering with him, this will vitiate the verdict, and his testimony will not be allowed to show that no such tampering took place. Boles *v.* State, 13 S. & M. 398; Hare *v.* State, 4 How. 187; Organ *v.* State, 4 C. 78.

A juror in the box whispered to a bystander asking him to get the court to let him off that his wife was very sick, to whom the reply was made that it was too late, and nothing further passed between them, is not reversible error. Chase *v.* State, 46 Miss. 683.

they continued to bother him. This testimony was excluded by the court on motion by the State. The court gave the following instruction, among others, for the State over defendant's objection:

" If the jury believe from the evidence that the defendant, Smith, with a knife, that was a deadly weapon, cut and stabbed Jas. G. Evans, and thereby killed him, then the use of such deadly weapon is *prima facie* evidence of malice and an intention to murder and before this presumption is overcome it must be shown by the evidence in the case to the satisfaction of the jury that there was no malice or the killing was done in the heat of passion, or that at the time of the use of such deadly weapon the defendant was in immediate, real, or apparent danger of his life or some great bodily harm from the deceased, Evans, and such danger must have been urgent, present, and imminent at the very time of the killing."

Defendant made a motion for a new trial on the ground, among others, that one of the jurors, after being sworn as a juror, had a private and whispered conversation with a person who had been drawn on the special venire but had been found to be disqualified by the court.

On this question the court heard testimony and overruled the motion for a new trial. Defendant appeals.

APPEALED from Circuit Court, Lincoln county, J. B. CHRISMAN, Judge.

Affirmed June 1, 1885.

*Attorneys for appellant, Sessions and Cassedy.*

*Attorney for appellee, T. S. Ford, Attorney-General.*

Brief of Sessions & Cassedy:

In support of the first assignment of error, we call the attention of the court to the fact disclosed by the record that the jury that tried the case was made up in part from the special venire, in part from the regular jury for the second week, and completed from the regular jury for the third week. This being the fact, every reason exists to sustain the demand for a full jury, before being required to exercise the right of challenge that is given for the rule announced in Thompson *v.* The State, 58 Miss. 62. * * *

As to the second assignment of error, that the court refused to entertain or hear the application for a change of venue, on the ground alone that it came too late, we submit that the construction placed by the court upon section 3065 of the Code of 1880 does not comport with the spirit or letter of section 4 of article 12 of the State Constitution, as interpreted by this court in Rattray *v.* The State, 61 Miss. 377. In this case the court, referring to the constitutional provision, says: " This guarantees as a constitutional right a change of venue where *justice and impartiality* demand it and forbids the imposition of any pecuniary charge as a prerequisite." \* \* \*

The petition and affidavits for a change of venue are to be taken as true, and we invite the court to a careful perusal of both, and we think it will be made to appear that the application is within the exception even of section 3065. The court could not know without a hearing of the application whether the ground upon which it was based occurred before or after the drawing of the venire. We insist, however, that notwithstanding section 3065 the appellant had a right under the Constitution to show that he was entitled to a change of venue. \* \*

We will consider first the sixth cause assigned for a new trial, which was that one of the jurors who sat upon the trial of the cause, after being sworn as a juror, had a private and whispered conversation with a person who had been drawn on the special venire, but had been found by the court to be disqualified. \* \* \*

The rule as announced by this court upon this subject is, that when the acts shown are of such character as may have prejudiced the defendants the presumption is that they did, and it devolves upon the State to establish the fact that such result did not follow. Green *v.* State, 59 Miss. 505.

What transpired between the parties in this private and whispered conversation is not known; the presumption is that it was something prejudicial to the defendant, and this becomes stronger when the ability to explain it by the production of the juror was within the power of the State, and he was not produced.

We will discuss only the third, fourth, ninth, tenth, eleventh, and twelfth instructions given for the State. The third and eleventh announce the proposition that when the killing is proved the burden of proof shifts, and that it must be discharged in one of two ways, and this to the " *satisfaction* " of the jury —

First, by the facts adduced in evidence against him, or second, by evidence offered by the defendant; but however the presumption is sought to be rebutted, it must be done to the *"satisfaction"* of the jury before an acquittal will follow.

These instructions are condemned by this court in Hawthorn *v.* State, 58 Miss. 778; Bastrop *v.* State, Opinion Book to p. 453; Rosamond *v.* State. Speaking of the instructions given in that case the court says: " It not only imposed on the accused the duty to show that the killing was not malicious, but suggests, if it does not require, that he should furnish a *preponderance* of evidence in support of that negation." He was required by it to show that the killing was not malicious to the *satisfaction* of the jury; and nothing less than preponderant evidence could do this." * * *

An examination of the instructions given for the defendant will show that the error in the instructions referred to were not cured. Taken all together, they are in effect the same as the third instruction given in the Hawthorn case for the defendant, and in that case, it was held that the vice was not cured by the third instruction. 58 Miss. 389, 390.

In this connection we call the attention of the court to the tenth and eighteenth instructions asked in behalf of the defendant but refused by the court, as well as to the testimony of the witnesses, especially that of Hudson and Cox, as to the physical strength of Evans, and we ask that all be considered with reference to that feature of the ninth instruction given for the State, wherein it is asserted that " slight blows with the fist" is not such great bodily harm as would justify a homicide. In the same connection, we direct attention to the tenth instruction given for the State which announces the proposition that though Evans was a *more powerful man physically than Smith* and that Evans struck the first blow with his fist still such facts of themselves would not justify the killing. * * *

The court will bear in mind that the evidence as to the respective strength of the parties was adduced by the State with the exception of the witness Hickman. But by the refusal of the tenth and eighteenth instructions it was all practically withdrawn from the consideration of the jury so far as it might serve to benefit the defendant, but retained by the ninth and tenth instructions given for the State, so far as it was necessary to emphasize the idea of guilt. * * *

The conversation Evans had with Watts but a short time before the homicide serves to show not only Evans' own estimate of his physical power, as compared with that of Smith, but also his disposition to assault Smith if he demanded pay for the hog, for he said (referring to the defendant and his father), that "he would rather fight them than do anything else, and he would fight them *both at once.*" * * *

If Evans was possessed of the *means* to kill him or do him great bodily harm and was proceeding to do it, Smith had a right to defend himself and kill him, and this without regard to the fact of Evans being armed or unarmed. Miller *v.* State, 74 Ind. 8; 38 Mich. 732; Bangs *v.* State, 60 Miss. 571. * * *

Uncommunicated threats may be admitted in evidence, therefore, even where there were witnesses to the killing if their testimony leaves it doubtful who began the encounter. Johnson *v.* State, 54 Miss. 437. * * * Our statute (§ 2878, Code of 1880), notwithstanding the fact it has been brought forward from Hutchinson's Code and the Codes of 1857 and 1871, and perhaps interpreted in the cases of Green and of Chase, we insist it has changed the common law in reference to self-defense. It says homicide is justifiable when committed in the lawful defense of such person * * * where there shall be reasonable ground to apprehend a design to *commit a felony, or to do some great personal injury,* etc. * * *

In the case of The Commonwealth *v.* Barnacle, 134 Mass. 215, which was an indictment for manslaughter and the plea of self-defense was interposed and the killing was done with a knife as in this case, the issue was sought to be sustained by the defendant, by proof that the deceased was a larger and more powerful man than the prisoner. The proof being rejected by the lower court, the defendant was convicted. On appeal to the Supreme Court, the case was reversed on this point alone, the court in its opinion saying: "The question whether a man has reason to apprehend danger from an attack must depend in some measure upon the size and strength of the assailant. If the assailant is a child or weak and effeminate man much inferior in strength to the party assailed, and unarmed, common experience teaches us that there is no cause to apprehend serious danger from the assault. On the other hand, if the assailant is a large and powerful man whom the assaulted party could not

successfully resist by his unaided strength, the fact would naturally create in his mind an apprehension of danger which might justify him in using a deadly weapon for self-defense. Certainly it must be competent to show that the assailant was armed with a deadly weapon; for the same reason it may be shown that he is armed by nature with a superior size and strength which makes his attack irresistible and dangerous." * * *

The fourth instruction asked in behalf of the defendant and refused by the court we call special attention to. The court was asked to charge the jury that it was not necessary that the whole jury should have a reasonable doubt as to the prisoner's guilt, but if a reasonable doubt arising from the evidence existed in the mind of any one juror as to the defendant's guilt, then there should be no conviction. The correctness of this instruction as an abstract proposition of law cannot be doubted. It has been sustained by other courts. 19 Iowa, 154; 2 Hawley's Crim. Rep. 603; 14 Cent. L. J. 447. * * *

The tenth and eighteenth instructions refused, announcing that it was proper for the jury to consider the physical strength and power of Evans in determining the question of danger, should have been given; the evidence to say the least tended to show a fact from which danger might be inferred, and in such cases, even in a civil cause, it has been held by this court to be error to refuse such an instruction. Levy v. Gray, 56 Miss. 318. * * *

In McKenna v. The State, 61 Miss. 591, 592, this court says: " It was not incumbent on the prisoner to do anything more than to raise a doubt in the mind of the jury as to *whether he had a right to believe* that the deceased was at the time seeking to do him some great bodily harm, and that the only way of avoiding this was to take the life of the deceased." * * *

To say to the jury that the use of the weapon is sufficient in law to establish a felonious homicide is to tell them that it establishes it *beyond a reasonable doubt,* for otherwise it would not be sufficient. Stokes v. The People, 53 N. Y. 164. We call the attention of the court in this connection and in support of our criticism of the eleventh instruction to the case of Chaffee & Co. v. The United States, 18 Wall. 516; 26 Me. 312; 1 Gray, 61; 24 Pick. 373; 7 Blackf. 427. * * *

Brief of T. S. Ford, Attorney-General:

The first assignment of error is not well taken. It is settled in this as well as other States that in capital cases where the defendant has been served with a copy of the special venire, that it is competent for the court to require the State and the defendant to accept or reject each juror as examined and tendered. Thompson's Case, 58 Miss. 62; Smith & Cavin's Case, 61 Miss. 754. * * *

The court did not err in excluding the evidence of the witness Watts. If for no other reason, it was only a conditional threat, and besides, it was not such a threat as would tend to throw any light upon the attitude of the parties at the time of the killing, of the sort that would have availed defendant in making out a case of self-defense. It was not a threat to kill or to do any felony, or any enormous bodily harm. It was only a conditional threat, " that if defendant and his father continued to bother him, he would fight them both at once." This was not communicated before the killing. The court admitted the other testimony offered by defendant for the purpose of showing that deceased made threat, such as it was. * * *

The facts deposed by the witness are undisputed and are overwhelmingly proven by a number of witnesses. That it was a mutual combat in which the deceased used his fists and the defendant fought with a deadly weapon is clear and undisputed. In other words, it was a combat in which defendant fought under an unfair advantage and with unexampled atrocity stabbed his adversary to death. * * *

The foundation was laid for the purpose of showing to the jury that Smith acted reasonably under the apprehension that he was in danger of life or limb, or enormous bodily harm. * * * A man may repel force by force, but he may not in repelling such attack use more force or other means than are necessary to repel the attack. Blows with the fist do not justify a resort to a deadly weapon and such a use of it as discloses an atrocious intent to take the life of an adversary. * * *

I respectfully submit that the record in this case shows beyond any dispute or doubt that this homicide was not in self-defense, and that if the court had given the instructions propounded, that they would have been as much inapplicable as in a case of assassination. I East. P. C. 277; Chase *v.* State, 46 Miss. 683;

Green *v.* State, 28 Miss. —; Wharton on Homicide, § 480. * * *

It was urged that the court erred in the instruction for defendant. * * * This instruction was manifestly refused, because if not misleading it was susceptible of misconstruction and abuse.

What figure was it intended to cut in the case? Was it intended to inform the jury that the twelve men must unite in a verdict before one could be rendered? Or that the case must result in a mistrial if there was one man who entertained a reasonable doubt of the defendant's guilt? It does not say so. No man would have used such language to convey that idea. It tells the jury that if one man doubted defendant's guilt, " there should be no conviction." It does not add " by the jury " or that they should return and report to the court that they could not agree. If the jury found one doubting Thomas, there should be no conviction. * * *

Writing at this time with only the assignment of error before me, and not knowing which particular one of the twelve instructions given for the State is to be assailed, it is respectfully submitted that all of these instructions, with perhaps the exception of the third and eleventh, involve principles so familiar and so often passed upon by this court that it is needless to discuss their propriety. The third contains a principle of the common law approved time and again by the court of last resort in this State. 8 S. & M. 417; 28 Miss. 700; 58 Pa. St. 9; 60 Miss.—, and cases cited. * * * If the principle therein contained in this instruction and the eleventh, is too broad, when construed with the twentieth, twenty-fourth, twenty-ninth, and thirtieth given for the defendant, it will be evident that the law was liberally construed by the court for the defendant, and that altogether the law was correctly given by the court and that no prejudice has resulted to the defendant.

The learned judge heard testimony as to the alleged misconduct of the juror Hoggatt and from the evidence submitted, and from his own knowledge and observation, found the fact adverse to the appellant. This is conclusive.

In conclusion it is respectfully submitted that looking to the whole record in this case, that the verdict of the jury was clearly right and in accordance with law and justice, and that in such

a case it ought not to be disturbed. 7 Geo. 613; Duwal's Case, 44 Miss. 789.

OPINION.— ARNOLD, J.:

The manner of organizing the jury was not improper and was warranted by the authority of Thompson *v.* The State, 58 Miss. 62; Smith & Cavin *v.* The State, 61 Miss. 754. There was no error in refusing to hear the application for a change of venue at the time when it was made. The law regulates the time and manner in which such application shall be made and heard. It may be made in term time or in vacation, but generally not after a special venire has been drawn, and never after the trial has been commenced and the jury is in part completed. Code, § 3063.

The presiding judge had better opportunities than we have for determining whether or not a conversation occurred, as alleged, with one of the jurors. His conclusion on the subject is sustained by the record, and we accept it as true.

If it be conceded that threats made by the deceased were competent evidence in the state of case shown by the record, still the testimony of the witness Watts was properly excluded. The declarations of the deceased related by him cannot justly be characterized as threats, and the appellant had the benefit of the more positive testimony of other witnesses in regard to threats made by the deceased.

No error was committed in giving or refusing instructions of which appellant can justly complain. The facts of the case did not warrant a more liberal interpretation of the law than was given by the court. Taking the most favorable view that can be suggested in his behalf from the record, and admitting that Evans struck first with his hand, or fist, the appellant was properly convicted of manslaughter.

The judgment is *affirmed.*